I am a lawyer in Missoula, Montana. I represent the appellate Crystal Moore, and I would like to reserve three minutes for my rebuttal, period. Thank you on my behalf and on behalf of my client for allowing me to appear for today's hearing by video. Very helpful to us, especially to avoid that expenditure, so we appreciate that. You're welcome. To be absolutely clear, what we're asking the court to do is that we're asking the court to declare that Alan Couture is judicially estopped from claiming that his obligations to Crystal Moore under the Indiana Circuit Court Divorce Decree from 2002, including specifically his obligation under the provision for marital tort, has not been discharged in bankruptcy and is not dischargeable in bankruptcy. And we would expect, as part of that, that the judgment would then be referred back to the Indiana Circuit Court to determine the amount due on that judgment and also the execution on the judgment. Well, let's jump right to it then, since you're relying on the judicial estoppel. The cases cited in your brief to estoppel involve scenarios where the prior judicial finding of non-dischargeability was applied to a subsequent bankruptcy adversary proceeding. Can you cite a case where judicial estoppel was used to overcome a prior bankruptcy discharge where there was not a prior finding of non-dischargeability? Well, I read that Cassidy case from the Seventh Circuit to hold that. It's somewhat of a confusing procedural case, but I believe that's what happened. And I'm glad you mentioned that, Your Honor, because the only case cited for that proposition was raised by Judge Hirsch in his opinion. It wasn't addressed by the District Court Judge Morris, nor was it raised by the appellant. And that was the Girola case, which is a Ninth Circuit bankruptcy appellate procedure case. That case is not anything like this case, Your Honor. That case was a case where after the bankruptcy discharge had been entered, the creditor then filed a lawsuit in municipal court and the debtor didn't respond, didn't file a response saying that the debt had been discharged in bankruptcy. The creditor then said that by their failure to raise that as an affirmative defense, that constitutes estoppel, that does not constitute judicial estoppel and refused to apply the estoppel theory to that case. That is not our case. This case, as a condition to not having to go to trial in 2002, Mr. Couture stipulated that no part of the decree, including the marital tort, would be dischargeable in bankruptcy. He then, two years later, filed a Chapter 7 in the Indiana Bankruptcy Court, and he and Crystal signed a reaffirmation agreement where they attached the divorce decree to the reaffirmation agreement. This was filed before the discharge order was entered. And Alan Couture said, it is my desire to reaffirm this debt due to the conditions of the divorce decree in which punitive damages have been determined and the resulting judgment being entered against me. I understand that this reaffirmation agreement will prevent me from seeking relief under the bankruptcy code once the case is filed. And then they submitted that divorce decree that showed exactly all of the accounts of the judgment, including count 10, with regard that the judgment would be non-dischargeable in bankruptcy. So I get the, you know, as I started in this case, there does, you obviously lost in the bankruptcy court and you lost in the district court. And there's a sense of unfairness to it. But then as I got into the law, the areas that I'm struggling with are the same areas that I think the bankruptcy court and the district court struggled with. And it seems that, are you, here's a couple of areas that just give me pause and probably not in your favor. Why wasn't a non-dischargeability complaint under section 523C1 required during the Indiana bankruptcy to exempt, to accept the marital tort judgment from the discharge? And also it seems to me that you might be arguing that the marital tort judgment is something other than a debt related to willful and malicious injury under section 523A6 or a non-support obligation under section 523A15. So if the debt's one of those two options, how do you get around your client's failure to file the non-dischargeability complaint in the Indiana bankruptcy? That's, I see where, you know, I looked at it and said, well, the parties all agreed that it wasn't going to be discharged. And so this seems pretty technical. But then when I look at the law, the law can be pretty technical. And that's where I'm struggling. Understood, Your Honor. And that's where obviously two courts before us have struggled. Yeah, understood, Judge. And my client is struggling mightily. I mean, this is all she has. This is her whole life as far as her ability to have income for the rest of her life. So yeah, and I understand the confusion here. But what I would say to the court is, I don't think that the law- Well, I can't, you know, while I can be sympathetic to that, I can't, I still have to follow the law. So I'm- Understood. And my point is, I don't think the law is that if a debtor can do anything they want, they can say anything they want. They can file any pleading they want. Whether it's accurate or not, they can lie with impunity. And once they get a discharge order, they're home free. I don't think that is the law. I don't think that's consistent with the idea of judicial estoppel. I don't even think that's consistent with the bankruptcy code. Lie is a pretty strong word. Where's the lie? Where he continually filed pleadings saying, this is not a dischargeable debt. And then he came in, in 2017, 15 years later, and said, the reason I want to undo this judgment that I stipulated to before the Montana Bankruptcy Court is because I didn't understand my legal rights. This is after he had already filed pleadings in the Indiana Bankruptcy Court and with the Indiana Circuit Court saying, I understand the ramification of this is that my debt will not be discharged in bankruptcy. So that to me was not a truthful statement in as much he'd already said, I understand this debt will not be discharged. But counsel, this is Judge Schroeder. I want to understand what actually happened back in 2004 in Indiana. He filed for bankruptcy. Did she appear? She did not because she did not get copies of the notices. But she did enter into an agreement with him that all of these obligations would be non-dischargeable. That was her understanding if he went into bankruptcy. Is that correct? That's correct. And she did sign the reaffirmation agreement saying that. And she did not appear. And there was no one to tell her that there was anything else that she needed to do. And she's relied on that all these years. Is that correct? She's relied on that. And she's relied on what the Indiana Bankruptcy Court didn't say, which if you read that transcript, the judge essentially agreed with Mr. Couture that the debt was not discharged, was not a dischargeable debt. She relied on Mr. Couture's continuing to more or less comply with the terms of the decree. When I say more or less, he was not current, but there were payments made. He did pay for the child support and the spousal. And then some money has been paid toward the marital tort before a lawyer told him this was, it's, you're actually done, right? So how much, well, there's a stipulation as to how much he's paid through the years, right? Well, that's another issue. After the case was filed in the Montana Bankruptcy Court, and it was referred to the Indiana court, Crystal and Alan agreed to reduce the balance to $575,000. Before that, the balance was $675,000 with additional mortgage and alimony payments that went along with that. So even after the bankruptcy court referred the case to Indiana, they still negotiated on the balance of the marital tort. And that's the point is that- Did the parties ever mediate this? Excuse me, did the parties ever mediate this? Yes. And they never- That's where the $575,000 came about. But not, they never did in the Ninth Circuit, right? No. Well, this was referred to mediation and then was released, as I understand it. That's correct. It was also mediated, Your Honors, in the federal court before the magistrate judge without success. So, you know, what was Crystal supposed to do? I guess the answer was she should have filed a adversary action in Indiana. And what would have happened if she had done that? I'm almost 99% sure what would have happened is what happened in the Montana bankruptcy case. Alan would have stipulated that it was a non-dischargeable debt. So the second thing that might have happened is he might have fought it, in which case there would have been the same estoppel argument available that I'm making right now. And third, even if he had litigated it, he would have lost. And the fact is he didn't want to litigate it because the facts of the Merrill tort are not pretty. Now, the whole point here was that the party's intent was this would survive bankruptcy. That was represented repeatedly. And now, you know, 18 years later, the fifth order in the string of orders, a judge says, well, I've looked at this after 18 years and now it's discharged. That to me is not equitable, fair, just, or any other thing. And I think under the concept of equitable estoppel, giving the number of representations that Mr. Couture made to the number of courts, he should be estopped to now say this debt has been discharged. Excuse me. I'm sorry. 60B, is that correct? 60B-6, correct. And what the difference, the difference that makes, I guess that relates to extraordinary circumstances because we're out of time for an ordinary 60B motion as I understand it. The difference is that he now has counsel as opposed to when he was in through the bankruptcy and when he was originally before the bankruptcy court in Montana. Is that the change in circumstance? I don't think it changes anything because again- That is the only change in circumstance. Is that correct? That's the only change. And he came to the court, his whole 60B-6 motion was I didn't understand the law. And that's not a 60B-6 relief. That's a 60B-1 relief. And I think the court erred by granting the 60B-6 relief. So I want to reserve a little bit of my time. Yeah, you have a little over two minutes. So go ahead. Thank you. All right, we'll hear from the appellee. Thank you, your honors. Mark Lario for Alan Couture. I'd like to address first off that the judicial estoppel, I believe shouldn't apply, shouldn't even be considered in this case. This is a case that I've had for a while and it always starts with, was the debt discharged in 2004? And if it was discharged, what remedy would Mr. Couture have, which takes us to 60B-6? Everything- Well, you didn't address the timeliness of your Rule 60 motion in your briefing. Is it your position that timeliness is not relevant to our review of the bankruptcy court grant of your motion? Why was your motion timely? It was timely because of the extraordinary circumstances, the extraordinary situation that we're in. Well, how does an error of law as extraordinary circumstances balance against the questions of timeliness and prejudice when evaluating a Rule 60 motion? Well, Your Honor, I think that really is the question. Thank you. I do think that's the question because I think the initial question as to whether this debt was discharged, our starting point is that this debt was discharged. But we're here on an appeal from the grant of a Rule 60B motion, correct? Yes. And Judge Froder asked the question of your opponent, was there anything offered by the way of extraordinary circumstances, which the Rule seems to require, that other than saying, I didn't have a lawyer? Well, more clearly is what- I mean, this is what, 15 years after he agreed that it was non-dischargeable? Well, specifically- He's asking for relief from a judgment he agreed to 15 years earlier? Do I have that right? Not quite. The Rule 60- How many years is it? Well, this Rule 60B, 60B-6, refers to Judge Kershaw's 2014 order in the Montana court. There was a Indiana court bankruptcy that discharged it. So it's not 15 years after the fact, it's three years- Three years. Three years after the fact? Yes, it's three years. And so is there no time limit at all in connection with the Rule 60B motion? Yes, there should be. It's six. It should be timely. It's that, and that his understanding, he was finally informed that his debt actually was, had been discharged. So at the point he became aware- Well, his debt had been discharged because she didn't file an adversarial proceeding, right? Because she, basically, both of them were representing themselves. They didn't do it correctly, even though they looked at each other in the face and said, okay, we're not discharging these things. And then when he later, I mean, to his credit, he basically continued to pay and paid, so the children and all of that. So, and some paid toward the marital tort, I guess. Yes. But there's still money left on the marital tort. Still money left on the marital tort, and within the decree- But then a lawyer tells him, aha, she needed to file, legally, she was required to file a non-dischargeability complaint, and therefore, the marital tort was discharged, right? Yes. At that point, it became obvious- But basically, it never was, they agreed. It never was their intention. So, you're pushing a rock uphill on something that seems very unfair. He's pushing a rock uphill because she didn't file that. And, you know, you're sitting here in front of three judges that, and two courts that basically you won in front of, but it doesn't make the bitter pill any less bitter. So, I guess- Yes, Your Honor, he's lived with- I don't understand why the parties just, I don't understand why they both were digging in so strongly on mediation or whatever. So, correct me if I'm wrong, it seems to me what you're arguing is, on the one hand, we should not excuse her neglect for not filing something in the earlier bankruptcy, but we should excuse your client's neglect in not timely filing a Rule 60B motion. No, I don't agree with that, Your Honor. I think it was timely. Tell me why. I think it was timely. I think that within the- Well, first of all, even by your admission, it's three years late. Yes. Correct? Yes, yes. But clearly- And his excuse is, I didn't understand the law. And can we fairly assume that the reason she didn't file a complaint in the bankruptcy proceeding earlier is because she didn't understand the law? Yes. Okay, so we have two parties who didn't understand the law. What are we supposed to do? I think we should look at that reaffirmation hearing because I've looked at that reaffirmation hearing, the transcript, and Judge Grant at the reaffirmation hearing. And also, I think there's facts that are being offered that aren't in the record. Whether she got notice to that hearing long ago, that reaffirmation hearing long ago, that's not in the record, has not been raised. So it's assumed that she received notice. She was named as a creditor on his bankruptcy. On each one of these bankruptcies, the debt, the 675,000 was separated as a different debt from the alimony, the child support, et cetera. In the reaffirmation hearing, Judge Grant was put in this position to explain to an unrepresented person the nature of a reaffirmation agreement and his role in it. There was no statement by Judge Grant that should be deemed an order or suggesting that this debt was not dischargeable or was dischargeable. Had she been there, she would have been informed at that point, I better file an adversary proceeding. I better file something. She wasn't there. She has benefited now from that for 20 years. Only recently- He didn't really benefit from it for, how much you see, he was paying on the child support and the spousal, which aren't dischargeable, right? So how much has he paid off? The marital tort was that he gave her an STD or whatever, right? So how much has he paid on that? Let me address that too, because the spousal support, which even in the 2004 bankruptcy would have been non-dischargeable, it became discharged under their own decree, a decree that her attorney put together. And the spousal tort was linked directly to spousal support. Once the spouse, if the spousal, excuse me. Well, it just sort of seems like, this doesn't make attorneys look very good because it seems like the parties were trying to be fair to each other and they were in agreement. And then the attorneys later, some 15 years later said, oh, you really don't have to, you know, you don't really have to pay on that, you're done. Yes. And that's how, unfortunately that's how records read, but it isn't quite, that isn't quite the story for Mr. Couture. He left the marriage for personal reasons. He had a lot of guilt. He agreed to this marital tort. It actually was litigated in the Indiana court, family court, in I believe 2020, 2021, as to whether this tort even took place. And it was- Well, he had a lot of guilt. Now he's like, now the other side's lumping on us that she can't live without this payment. And so everyone's putting a lot of guilt on us. And so we're here to decide the law. So. There actually was no marital tort. There was no STD. There was no cervical cancer. Well, but that, you can't litigate that now. I mean, they agreed to that. Yeah. And then it's, so then, yeah. Which is difficult, because we can't, we can't litigate that, but we discuss it. We discuss all the- It's going to be a harsh result- For one of you, either one or the other. One side or the other is not going to like it. I'd love to inform you as to the mediation process. I just don't think it's proper, but we certainly- Not asking about what- No, but we could delay our ruling. We're not asking about what's happened in the past. Yeah. We can delay our ruling. Why don't you both seem like reasonable people, good lawyers, you know the law, you know where the play in, in the joints in this case is. Sit down and settle the thing. I've always been- Because one of your clients is going to walk away from what we write. Yes. Very disappointed. Understood. I understand that. I agree that mediation is a place to resolve this, particularly given the age of the parties at this point.  I don't know if this court- We have a wonderful- Orders mediation. We have a mediation office affiliated with the court. They're employees of the court. They're not outside mediators. They're all experienced litigators. They're very adept at settling cases. Get on the phone. They'll talk with both of your sides. And if they can't, if they feel they can't settle it, they'll tell us and we'll render a judgment, which one of you is not going to like. I understand. Has that already happened? I'm sorry. Counsel, this case was referred to mediation and was released. Did you have any communication with the mediators? Yes, I participated in the mediation with the magistrate in Montana. No, but what about- Talking about- The circuit mediators. The circuit mediators. Oh, no, I haven't participated in that. Okay. Mm-hmm. Thank you. That may be the proper avenue for both parties. Well, what we have the authority to do is we can refer it, the party's contact, and they're walled off from us. They don't tell us what anyone says or anything like that. And either they come back and say, we've settled it or we haven't. We still retain the case. If you don't settle it, then we call the ball and one person goes big, one person goes home, and that's the end of it. I mean, the only thing in terms of that both of you have at this point is you have judges that have discussed the case with you that are deciding the case and have expressed concerns, I think, on both sides that you can talk to your clients and you can say, well, I still think you're gonna win or I still think you're gonna lose or whatever, but the parties have a little dose of, you know, we're not telling you what our ruling's gonna be and we don't even know what it is. We don't discuss it till we go back here. But we will, as Judge Hawkins said, someone's gonna win and someone's gonna lose and that we can't, I can't even tell you who that would be right now, but we can delay that, give you a chance to mediate it. If you settle it, then you have control. If you don't settle it, we decide. You don't lose, you don't have to come back ever again. It'll be done. Okay, I think you understand where we are and we understand where you are. Maybe we can hear from your opponent now and he can talk about what we just talked about. But we appreciate your argument very much. Can I reserve my time here? Well, you can finish and use it right now. Let me just make one point. I don't wanna, I don't wanna argue myself out of a- Do you don't wanna snatch defeat from the jaws of victory? That's exactly right. Is that the- These folks were both pro se. They were both pro se for years. And for what Mr. Couture did right with his pleadings in his bankruptcy, he should benefit from the law. I believe that the debt was discharged. I think that question, and I would hope that that's clear to this court, it was clear to the other, that the debt was discharged. Now the question is whether he was, he timely brought that issue up. Thank you, your honors. Thank you. I really appreciate being here. Thank you. Thank you. We appreciate your comments. All right. Okay. We're back with the appellant. Thank you, your honor. Real quick, just on the timeline, just so we're clear about it, the judgment in which he originally stipulated that the marital tort would not be discharged was in 2002. He actually came to the Montana bankruptcy court in 2013 and said the same thing. So it wasn't then until 2017, which is 15 years after the Indiana decree and 12 years after the Indiana- No, we know all of that. We know all of that. And we also know that your clients- Okay, I just wanted to correct that. We know all of that, but we also know that your client's lost two times. So what we're suggesting- My client was lost two times. What? In bankruptcy in the district court. Yeah. So- So the identical thing that you are saying, which is somebody's going to lose big, somebody's going to win big. It's all or nothing. He then directed us to a mediation with the magistrate, which took all day and was not successful. I'm more than- And the reason we didn't take advantage of the Ninth Circuit appellate process is because we'd already just completed an unsuccessful process. And my client doesn't have two dimes to rub together. Well, they don't- That said- They don't, you have to, you get charged. You charge, but our mediators don't charge people. Yeah. And so, yeah, my client has lost. And I think under the concept of estoppel, she shouldn't have. As far as Mr. Couture's statement that he didn't understand the law, I submit that's irrelevant because he basically said, whatever the law is, my obligation is not going to be discharged in bankruptcy. And he said that repeatedly. That all said, if this court says you should go to mediation, of course, my client will go to mediation. I would appreciate doing that, but we've tried repeatedly and it has not yet been successful. Well, I don't think, technically, you all could go to the Supreme Court after this, but I'm gonna tell you the chances are slim and none and slim left town. When you were at the district court, you all knew that you could appeal to the appellate court basically by right, but maybe the Supreme Court would be interested in your case, but I don't think so. So that's the only, we'll conference on it and we'll decide. We'll either decide it now or we'll refer it to mediation. And if it's not successful, we'll decide it then. All right. Thank you both for your arguments today. All right. This matter will stand submitted at this point and the court is now in recess. We'll be back in court tomorrow at 9 a.m. Thank you.
judges: SCHROEDER, HAWKINS, CALLAHAN